Robert B. CLARKSON,
Plaintiff-Appellant,

v.

INTERNAL REVENUE SERVICE and
John Henderson, District Director,
Defendants-Appellees.

No. 80–7973.

United States Court of Appeals,
Eleventh Circuit.

June 21, 1982.

Robert B. Clarkson, pro se.

Myles E. Eastwood, Asst. U. S. Atty., Atlanta, Ga., John F. Murray, Acting Asst. Atty. Gen., Michael L. Paup, Richard W. Perkins, Gayle P. Miller, Robert A. Bernstein, Tax Div., Dept. of Justice, Washington, D. C., for defendants-appellees.

Before TUTTLE, TJOFLAT and CLARK, Circuit Judges.

TUTTLE, Circuit Judge:

This appeal involves several consolidated cases arising under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1976) and the Privacy Act of 1974 (Privacy Act or Act), 5 U.S.C. § 552a (1976). In each of these cases the Court below granted summary judgment in favor of the Internal Revenue Service (IRS) and Director Henderson. Seeking to obtain attorney fees and costs relating to the FOIA actions and to have the judgment relating to the Privacy Act suit reversed, Clarkson filed this appeal pursuant to 28 U.S.C. § 1291 (1976). We affirm in part and reverse in part for the reasons which follow.

## I. BACKGROUND

Appellant Clarkson has for several years been active in various organizations formed to protest the federal government's system of taxation. In February of 1979, Clarkson served as the principal speaker at a meeting

held in Atlanta, Georgia for the purpose of planning the 1979 Tax Protest Day demonstration. Two Internal Revenue Agents, apparently claiming to be insurance agents, attended this meeting. Upon learning the true identity of these agents, Clarkson initiated a series of letters to the IRS requesting copies of various documents pursuant to the FOIA and the Privacy Act.[1]

The IRS refused these requests on the ground that it maintained no files on any of the entities named in Clarkson's letters. Dissatisfied with the IRS's responses to his requests, Clarkson filed his first FOIA suit *in propria persona* against the IRS and Director Henderson on April 18, 1979. After further correspondence between the parties concerning Clarkson's FOIA requests, the IRS provided Clarkson with 109 pages of documents on August 1, 1979, and informed him that other documents were being withheld based on certain exemptions from disclosure under the FOIA. On August 31, 1979, Clarkson filed a second FOIA suit *in propria persona* against the IRS and Director Henderson. Clarkson also filed a *Vaughn Rosen* motion to compel the IRS to provide him with a detailed justification for the withholding of all documents claimed to be exempt from disclosure under the FOIA. By order of December 28, 1979, the district court consolidated these two suits, granted Clarkson's *Vaughn Rosen* motion, and directed the IRS to respond to Clarkson's FOIA request within thirty days. Clarkson contends that it was primarily because of this order that he received a second group of documents from the Department of Justice on January 18, 1980. The district court then reviewed *in camera* the documents for which the IRS claimed specific exemptions. By order of June 27, 1980, the district court granted the IRS's motion for summary judgment on the basis that the exemptions

claimed as to this third set of documents were proper. The costs of the actions were taxed against Clarkson.

Meanwhile, on March 31, 1980, after exhausting his administrative remedies, Clarkson filed a Privacy Act suit against the IRS and Henderson. In this suit Clarkson sought declaratory, injunctive and monetary relief against the defendants for alleged violations of subsections (e)(1), (5) and (7) of the Privacy Act. 5 U.S.C. § 552a(e)(1), (5) and (7) (1976). By order dated July 31, 1980, the district court granted summary judgment in favor of the defendants on the ground that the Privacy Act is not applicable to documents which are not contained in the agency's "system of records" as that phrase is defined by the Act.

■ Clarkson also filed a series of motions in these cases. On July 24, 1980, he filed a motion for attorney fees in the two FOIA actions. On July 30, 1980, Clarkson filed a motion for a new trial in the FOIA suit. On August 11, 1980, Clarkson filed a motion to consolidate all three cases, a motion for a new trial in the Privacy Act suit, and a cross-motion for summary judgment in the Privacy Act suit. On August 12, 1980, Clarkson filed a motion in opposition to defendant's bill of costs in the FOIA suits. The court treated the new trial motions and the cross-motion for summary judgment as motions for reconsideration.[2] On October 17, 1980, the court entered an order consolidating the three cases and denying Clarkson's other motions.

## II. ATTORNEY FEES AND COSTS

■ Awards of attorney fees and costs against the United States are allowable only to the extent that the government has waived its right of sovereign immunity.

---

1. Clarkson's first letter, dated February 20, 1979, requested copies of all documents

   pertaining to me or an organization known as "We the People" or the Georgia Patriots, especially the materials pertaining to the survaillance [sic] operation conducted on 6 Feb 79 at the Holiday Inn in Atlanta.

2. We find no error in the district court's decision to treat these motions as motions for reconsideration. Since one of these motions was served within the time period prescribed by Rule 59 by the Federal Rules of Civil Procedure, we find that appellate jurisdiction was properly invoked in this case. *See* Fed.Rules App.Proc. 4(a)(4).

*E.g., Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 267–68 n.42, 95 S.Ct. 1612, 1626–1627 n.42, 44 L.Ed.2d 141 (1974); *Barrett v. Bureau of Customs*, 651 F.2d 1087 (5th Cir. 1981). The Freedom of Information Act contains a specific limited waiver of sovereign immunity by providing:

> The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

5 U.S.C. § 552(a)(4)(E) (1976). Thus, in the context of FOIA litigation, an award of attorney fees and costs is proper only where the party seeking the award has "substantially prevailed" in the litigation and where the court, in its discretion, determines that such an award is justified in a particular case. *E.g., Cazalas v. United States Department of Justice*, 660 F.2d 612 (5th Cir. 1981); *Lovell v. Alderete*, 630 F.2d 428 (5th Cir. 1980); *Blue v. Bureau of Prisons*, 570 F.2d 529 (5th Cir. 1978).

■ Moreover, with respect to attorney fees, the Fifth Circuit Court of Appeals recently interpreted a similar provision of the Privacy Act to authorize such an award only to the extent that the "services of an attorney were utilized and fees incurred." *Barrett v. Bureau of Customs*, 651 F.2d 1087, 1089 (5th Cir. 1981). Thus, in *Barrett*, the Court held that *pro se* litigants who are not attorneys are not entitled to an award of attorney fees even if the other requirements of the Privacy Act are satisfied.[3]

Since we find the attorney fees provisions of these acts to be virtually identical, both in terms of statutory language and congressional intent, we must conclude that the holding in *Barrett* precludes an award of attorney fees under the FOIA to a *pro se* litigant who is not an attorney. We therefore hold that Clarkson is not entitled to an award of attorney fees for his *pro se* representation in the two FOIA suits.

■ Unlike attorney fees, however, costs of litigation can be reasonably incurred even by a *pro se* litigant who is not an attorney. Thus, the rationale of the *Barrett* decision would not preclude a *pro se* litigant from recovering his costs of litigation if the other requirements of the statute are satisfied. *See, e.g., Crooker v. United States Department of Justice*, 632 F.2d 916, 921–22 (1st Cir. 1980); *White v. Arlen Realty & Development Corp.*, 614 F.2d 387, 389 n.4 (4th Cir. 1980). In deciding whether a party has substantially prevailed, a court should consider whether the "prosecution of the action could reasonably be regarded as necessary to obtain the information" and whether "the action had a substantial causative effect on the delivery of the information." *Lovell v. Alderete*, 630 F.2d 428, 432 (5th Cir. 1980) (quoting *Vermont Low Income Advocacy Council, Inc. v. Usery*, 546 F.2d 509, 514 (2d Cir. 1976)). If a party is found to have substantially prevailed in the litigation, then the court must exercise its discretion in determining whether an award is justified.[4] *Cazalas v. United States De-*

---

**3.** In construing this portion of the Privacy Act, the court in *Barrett* concluded that the phrase "reasonably incurred" modifies the phrase "reasonable attorney fees and other litigation costs." 651 F.2d 1087, 1089 (5th Cir. 1981). The court also found that the purpose of the Act, to encourage potential litigants to consult with attorneys, would not be furthered by an award of attorney fees to a *pro se* litigant who was not an attorney. *Id.* We note that this rationale does not necessarily preclude an award of attorney fees either to legal services corporations, *Sellers v. Wollman*, 510 F.2d 119, 123 (5th Cir. 1975) or to a *pro se* litigant who is an attorney. *Cazalas v. United States Department of Justice*, 660 F.2d 612, 623 n.13 (5th Cir. 1981). Although Clarkson maintains that he is a law school graduate, we find the *Cazalas*

decision to be inapposite since Clarkson concedes he is not licensed to practice law in any state. *See Hannon v. Security National Bank*, 537 F.2d 327 (9th Cir. 1976).

**4.** Based on the legislative history of the FOIA, courts have identified four criteria to be evaluated in reaching the discretionary determination of whether the award is justified:

1. The benefit to the public deriving from the case;
2. The commercial benefit to the complainant;
3. The nature of plaintiff's interest in the records sought;
4. The basis for the government's withholding of the requested documents.

*partment of Justice, supra; Blue v. Bureau of Prisons, supra.*

■ In the instant case, the district court found, without discussion, that Clarkson had not substantially prevailed in his FOIA suits. As is often the case in FOIA suits brought to enforce an administrative request for documents, the record in this case is somewhat confusing as to when and to what extent the government provided Clarkson with the documents requested in his various letters. Yet it is undisputed that Clarkson received two sets of documents from the government at some point after suit had been filed.[5] More importantly, this second set of documents was released only after the court entered an order requiring the IRS to provide Clarkson with a detailed justification of why additional documents were exempt from disclosure. Under these circumstances, we must conclude that the lawsuits "could reasonably be regarded as necessary" and that they had a "substantial causative effect on the delivery of information." *Lovell v. Alderete*, 630 F.2d 428, 432 (5th Cir. 1980) (quoting *Vermont Low Income Advocacy Council, Inc.*, 546 F.2d 509, 514 (2d Cir. 1976)). Since the district court did not reach the issue of whether a discretionary award of costs was justified in this case, we remand this issue to it for further proceedings consistent with this opinion.

### III.  PRIVACY ACT CLAIMS

Appellant Clarkson raises several statutory challenges to the IRS's practice of collecting and maintaining various documents, including surveillance reports, newsletters and press releases, pertaining to him individually. Specifically he asserts that the collection of documents describing his exercise of First Amendment rights violates subsection (e)(7) of the Privacy Act which provides:

> (e) ... Each agency that maintains a system of records shall—
>
> .    .    .    .    .
>
> (7) maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity.

5 U.S.C. § 552a(e)(7) (1976). Moreover, he asserts that by maintaining these documents, the IRS has violated two other provisions[6] of the

Privacy Act which require:

> (e) Each agency that maintains a system of records shall—
>
> (1) maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President;
>
> .    .    .    .
>
> (5) maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination;

*Cazalas v. United States Department of Justice*, 660 F.2d 612, 619 (5th Cir. 1981); *Blue v. Bureau of Prisons*, 570 F.2d 529 (5th Cir. 1978); *Nationwide Building Maintenance, Inc. v. Sampson*, 559 F.2d 704 (D.C.Cir.1977).

**5.**  The government asserts, however, that until it received Clarkson's letter of June 25, 1979, it lacked adequate notice of the documents requested. Recognizing that the mere delivery of information after a suit has been filed does not in itself establish that a party has "substantially prevailed," *Cox v. United States Dept. of Justice*, 601 F.2d 1 (D.C.Cir.1979), we find the government's explanation unpersuasive. We note that Clarkson's original letter dated February 20, 1979, provided the government with the specific date, location and sponsor of the meeting which was the subject of surveillance by its agents. Thus, we are unable to find that the IRS lacked information sufficient to enable it to respond to Clarkson's request in a timely manner.

**6.**  Clarkson also alleges that the IRS has violated 5 U.S.C. § 552a(e)(6) by disseminating these documents without making reasonable efforts to insure their accuracy. We will not consider this issue since it was raised for the first time in this appeal.

5 U.S.C. § 552a(e)(1) and (5) (1976). In interpreting the scope of these agency requirements, it is necessary to refer to the pertinent definitions contained in the Act. The term "maintain" is defined to include the terms "maintain, collect, use, or disseminate." 5 U.S.C. § 552a(a)(3) (1976). The term "record" is defined as:

any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph;

5 U.S.C. § 552a(a)(4) (1976). The phrase "system of records" is defined as:

a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual;

5 U.S.C. § 552a(a)(5) (1976).

In the instant case, there is no dispute that the IRS is an agency which maintains a system of records. Similarly there can be no dispute that at least some of the surveillance reports or other documents identified by Clarkson are "records" since the IRS has admitted that these documents contain individual references to Clarkson. According to the IRS, these records are not, however, retrievable by Clarkson's name or other identifying particular. Rather these records are maintained only in a separate file entitled the "Tax Protest Project" file. Because these records have not been incorporated in the agency's "system of records," the district court held that the requirements of subsection (e)(1), (5) and (7) were not applicable and that the IRS was not required to comply with Clarkson's requests for amendment or expungement.

Asserting that the district court's interpretation of the Act is erroneous, Clarkson urges this Court to adopt the rationale espoused by the Circuit Court of Appeals for the District of Columbia in *Albright v. United States*, 631 F.2d 915 (D.C.Cir.1980). The factual situation in *Albright* is in many respects similar to the instant case. In *Albright* an agency of the federal government videotaped a meeting between social security analysts and their personnel director regarding the recent demotions of the analysts. The videotape was not, and was never intended to be, made a part of the agency's "system of records." Focusing on the plain meaning of the statutory language, the *Albright* court held that 5 U.S.C. § 552a(e)(7) prohibits an agency from even collecting records which describe how an individual exercises his First Amendment rights. The *Albright* court found this interpretation of the Act to be consistent with both the legislative history of the Act,[7] which reflects Congress' "special concern for the protection of First Amendment rights," *id.* at 919, and the guidelines promulgated by the Office of Management and Budget (OMB).[8] *Id.* at 919–20 n.5.

Conceding that the *Albright* court's literal interpretation of the Act is "grammatically possible" the IRS nevertheless contends that this interpretation is erroneous. It asserts that the district court's decision in this case ascribes the correct meaning to the requirements imposed on the agency by the Act. Thus, the IRS would have us interpret subsection (e)(7), for example, as requiring that an agency shall "maintain no record [which is incorporated into a system of records] describing how any individual exercises rights guaranteed by the First Amendment . . . ." Since most of the arguments presented by the IRS are directed toward

---

**7.** The Senate Report makes special note of "the preferred status which the Committee intends managers of information technology to accord to information touching areas protected by the First Amendment to the Constitution." S.Rep. No. 1183, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News 6916, 6971.

**8.** *See* 40 Fed.Reg. 28949 (1975). The OMB's authority to promulgate guidelines to the Privacy Act is contained in § 6 of the Act, Pub.L. No. 93–579, 88 Stat. 1896 (1974).

subsection (e)(7), we find it appropriate to discuss this provision separately.

### A. Subsection (e)(7)

The IRS raises numerous arguments in support of its assertion that the *Albright* interpretation of subsection (e)(7) is erroneous. Many of these arguments were discussed in detail by the court in *Albright* and we see no reason to repeat them here. In this case, however, the IRS presents two additional arguments which merit individual consideration by this Court.

▌ The IRS first asserts that if this Court adopts the rationale of the *Albright* decision, every piece of paper collected by a government agency will subject it to a claim for a subsection (e)(7) violation. We believe the IRS has seriously overstated its case for several reasons. In order for the prohibition of subsection (e)(7) to apply, the documents involved must constitute "records" which implicate an individual's First Amendment rights. As we have previously noted, at least some of the documents involved in this case clearly fall within the definition of records provided by the Act. 5 U.S.C. § 552a(a)(4) (1976). And, it cannot be disputed that memoranda reflecting the contents of Clarkson's political speech would be subject to First Amendment protections. Even where records implicating an individual's First Amendment rights are involved, however, the prohibition against collection of such records is not absolute. Thus, Congress has provided that an agency may collect such records if

> expressly authorized by statute or by the individual about whom the record is maintained or [if the collection is] perti-

nent to and within the scope of an authorized law enforcement activity.

5 U.S.C. § 552a(e)(7) (1976). Indeed, while the first two exceptions are not applicable in this case, the IRS asserted during oral argument that the surveillance of tax protest meetings is an authorized law enforcement activity. The Privacy Act does not specifically define the term "authorized law enforcement activity." Some guidance is provided, however, by the legislative history and the OMB Guidelines. The objective of the law enforcement exception [9] to subsection (e)(7) was "to make certain that political and religious activities are not used as a cover for illegal or subversive activities." 120 Cong.Rec. H10,892 (daily ed. Nov. 20, 1974). By enacting this exception, however, Congress did not intend to dilute the guarantees of the First Amendment by authorizing the maintenance of files on "persons who are merely exercising their constitutional rights." OMB Guidelines, 40 Fed. Reg. 28965 (1975) (quoting 120 Cong.Rec. H 10,892) (daily ed. Nov. 20, 1974) and H10,952 (daily ed. Nov. 21, 1974)). In determining the scope of the FBI's authorized law enforcement activities, one court has held:

> Merely because [an agency] *may* act within its authority by monitoring the public or private speeches of a person in the course of a legitimate security investigation does not give it the right to maintain records relating to the contents of these speeches where the investigation does not focus on a past or anticipated specific criminal act.

*Jabara v. Kelley*, 476 F.Supp. 561, 581 (E.D. Mich.1979) (emphasis in original).[10]

---

**9.** Criticizing the breadth of this exception one commentator has noted that it "opens a loophole that threatens to swallow the rule" and "may well perpetrate those 'fishing expeditions' that subsection (e)(7) is designed to preclude." Guidebook to the Freedom of Information and Privacy Acts 46, 74–75 n.70 (R. Bouchard & J. Franklin ed. 1980).

**10.** Subsection (e)(7) of the Act has rarely been construed by the courts. A similar reference to "law enforcement activities" is, however, contained in subsection (b)(7) of the FOIA. *See* 5 U.S.C. § 552(b)(7). Examples of properly authorized law enforcement activities in an analo-

gous context may thus be found from a review of FOIA cases involving subsection (b)(7) exemptions from disclosure. *See, e.g., NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978) (witness statements relating to NLRB investigation); *Moorefield v. United States Secret Service*, 611 F.2d 1021 (5th Cir. 1980) (background records relating to surveillance of specific person twice convicted for threatening the life of the President); *Williams v. IRS*, 479 F.2d 317 (3d Cir. 1978) (data compiled in connection with an audit of an individual's income tax liability).

Support for this proposition can be found in the Senate Report which states that the restraint imposed upon an agency by subsection (e)(7) is aimed at "preventing collection of protected information not immediately needed, about law-abiding Americans, on the off-chance that Government or the particular agency might possibly have to deal with them in the future." S.Rep.No. 1183, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News 6916, 6971. Although the scope of authorized activities must necessarily vary depending upon the particular agency involved, we find the balance struck by the court in *Jabara* to be appropriate in this case. Thus, we hold that to the extent that the IRS has engaged in the practice of collecting protected information, unconnected to any investigation of past, present or anticipated violations of the statutes which it is authorized to enforce, subsection (e)(7) of the Act has been violated. Since the record in this case does not reveal either the purpose of the surveillance activities or the extent to which records of political speeches are maintained by the IRS, we must remand this issue to the district court for further proceedings consistent with this opinion.

██ The IRS next asserts that even if subsection (e)(7) applies to records not contained within a system of records, Clarkson would be unable to obtain any effective relief under the Act. Although subsections (d)(2) and (d)(3) of the Act require the IRS to amend or expunge its records under certain circumstances, the IRS asserts that the applicability of these subsections is limited to records contained within a system of

records.[11] *See Grachow v. United States Custom Service,* 504 F.Supp. 632 (D.D.C. 1980); *Lynch v. IRS,* Civ.No. 77–1219 (D.D.C., May 10, 1978). Thus, according to the IRS, since the Act does not authorize the amendment or expungement of offending documents which are not contained within an agency's system of records, the *Albright* interpretation of subsection (e)(7) does not fit within the comprehensive statutory scheme enacted by Congress.

██ We find unpersuasive the government's argument that the Act provides no effective relief for a violation of subsection (e)(7) as interpreted by the Court in *Albright v. United States, supra.* Section (d) of the Act provides in pertinent part:

(d) Access to records—Each agency that maintains a system of records shall—

(1) upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any portion thereof in a form comprehensible to him, . .

(2) permit the individual to request amendment of a record pertaining to him and—

.    .    .    .    .

(B) promptly, either—

(i) make any correction of any portion thereof which the individual believes is not accurate, relevant, timely, or complete; or

---

**11.** The Privacy Act expressly provides for injunctive relief for only two types of agency misconduct, that is, wrongful withholding of documents under subsection (d)(1) and wrongful refusal to amend an individual's record under subsection (d)(3). *See* 5 U.S.C. § 552a(g)(2) & (3). The remedy for violations of all other provisions of the Act is limited to recovery of damages upon a showing that the agency acted in an intentional or willful manner. *See* 5 U.S.C. § 552a(g)(4) (1976); *Edison v. Department of the Army,* 672 F.2d 840 (11th Cir. 1982); *Parks v. IRS,* 618 F.2d 677 (10th Cir. 1980); *Cell Associates, Inc. v. National Institute,* 579 F.2d 1155 (9th Cir. 1978).

Section (g) of the Act also contains a detailed provision for establishing jurisdiction. The jurisdictional requirements vary depending on which provision of the Act has been violated. Since Clarkson may fall within at least one of these provisions by establishing a violation of subsection (e)(7) alone, we find it more appropriate to discuss the question of the scope of paragraphs (d)(2) and (d)(3) in terms of an available remedy rather than as a separate basis for jurisdiction. We do not intend to restrict the district court's ability to reexamine the question of jurisdiction on remand after the appropriate jurisdictional facts have been developed.

(ii) inform the individual of its refusal to amend the record in accordance with his request, the reason for the refusal, the procedures established by the agency for the individual to request a review of that refusal by the head of the agency or an officer designated by the head of the agency, and the name and business address of that official;

(3) permit the individual who disagrees with the refusal of the agency to amend his record to request a review of such refusal, ... and notify the individual of the provisions for judicial review of the reviewing official's determination under subsection (g)(1)(A) of this section;

5 U.S.C. § 552a(d)(1)–(3) (1976). The language of paragraph (d)(1) expressly limits its applicability to records contained within a system of records. *See Hanley v. United States Department of Justice*, 623 F.2d 1138 (6th Cir. 1980); *Smiertka v. United States Department of the Treasury*, 447 F.Supp. 221 (D.D.C.1978), *remanded on other grounds*, 604 F.2d 698 (D.C.Cir.1979). Paragraphs (d)(2) and (d)(3), however, contain no such restrictions. Moreover, neither of these paragraphs refers back to the restrictive language concerning records in paragraph (d)(1). Rather, paragraph (d)(2) refers only to "a record."

The IRS asserts that the application of paragraphs (d)(2) and (d)(3) must be implicitly limited by the language in paragraph (d)(1) because the former paragraphs apply only to records obtained under paragraph (d)(1). This argument, however, ignores not only the plain language of the statute, but also the reality that the Privacy Act is not the exclusive means for obtaining access to records maintained by an agency.

Without delving into the complex interrelationship between the FOIA and the Privacy Act, we note that the FOIA is, of course, in no way limited to records contained within a system of records. *See* 5 U.S.C. § 552 (1976). As one commentator has explained: "An individual may utilize the Privacy Act or the FOIA or both to seek access to information about himself in agency records and is entitled to the cumulative total of access rights under the two Acts."[12] Guidebook to the Freedom of Information and Privacy Acts 21–22 (R. Bouchard & J. Franklin ed. 1980). Thus, we find it both necessary and appropriate to construe the plain meaning of the language of subsections (d)(2) and (d)(3) to authorize the amendment or expungement of all records which are maintained in violation of subsection (e)(7). Moreover, we believe that this construction is consistent with Congress' purpose in enacting provisions to safeguard First Amendment rights. Just as Congress must have been aware of the special treatment accorded First Amendment rights by the judiciary, it must also be credited with an awareness of the typical remedies afforded to vindicate violations of those rights. Prior to the enactment of the Privacy Act, courts have often recognized actions arising under the Constitution for expungement of agency records collected and maintained in violation of the First Amendment.[13] *See, e.g., Paton v. La Prade*, 524 F.2d 862 (3d Cir. 1975) (FBI surveillance and interception of lawful correspondence with the Socialist Workers Party); *Chastin v. Kelley*, 510 F.2d 1232 (D.C.Cir.1973) (retention of documents relating to proposed dismissal of FBI agent after charges had been withdrawn). Thus, we hold that, at least with respect to violations of subsection (e)(7), a plaintiff may be entitled to have

---

**12.** Indeed, the correctness of this explanation is amply illustrated by the ability of the plaintiffs in *Albright* to obtain a copy of the videotape, *see* 631 F.2d 915, 917 n.3, and the ability of Clarkson to receive a substantial number of documents maintained in the "Tax Protest Project" file.

**13.** In making this comparison, we of course do not intend to suggest that the enactment of the

Privacy Act in any way precludes a plaintiff from asserting a constitutional claim for violation of his privacy or First Amendment rights. Indeed, several courts have recognized that a plaintiff is free to assert both Privacy Act and constitutional claims. *See, e.g., Metadure Corp. v. United States*, 490 F.Supp. 1368 (S.D. N.Y.1980); *Jabara v. Kelley*, 476 F.Supp. 561 (E.D.Mich.1979).

the offending records amended or expunged even if the records are not maintained within the agency's system of records.

### B. *Subsections (e)(1) and (e)(5).*

■ The language of subsections (e)(1) and (e)(5) compels a different analysis. Unlike subsection (e)(7), these subsections do not address the protections afforded to individuals by the First Amendment. Indeed, subsection (e)(1) merely provides a general overall prohibition against the collection and maintenance of information which is irrelevant to the purposes of an agency. By definition the language of this subsection imposes a much less rigorous standard upon the agency than that required by subsection (e)(7). *See* OMB Guidelines, 40 Fed. Reg. at 28965 (1975). In light of the limited function of subsection (e)(1), we decline to extend the *Albright* rationale to this provision of the Act.

Similarly, the language of subsection (e)(5) cannot be read to apply to records not incorporated within an agency's system of records. The objective of this provision is to require an agency to take reasonable steps to insure the informational quality of the records which it relies upon in making determinations about an individual. *See, e.g., Edison v. Department of the Army*, 672 F.2d 840 (11th Cir. 1982); *Savarese v. United States Department of Health, Education and Welfare*, 479 F.Supp. 304 (N.D.Ga. 1979), *aff'd w/o opinion*, 620 F.2d 298 (5th Cir. 1980), *cert. denied*, 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1981); *Zeller v. United States*, 467 F.Supp. 487 (E.D.N.Y. 1979); OMB Guidelines, 40 Fed.Reg. at 28964. Thus, unlike subsection (e)(7), the requirements of subsection (e)(5) are specifically directed toward the agency's use of the records in making "decisions affecting the rights, benefits, entitlements, or opportunities (including employment) of the individual." [14] OMB Guidelines, 40 Fed.Reg. at 28964. Indeed, this Court has held that subsection (e)(5) requires a plaintiff to prove a "causal relationship between the allegedly erroneous record and an adverse determination based on that record." *See Edison v. Department of the Army, supra* at 845. The record in the instant case in no way indicates that the IRS has made or intends to make any "determinations" about Clarkson based on these records.[15] Thus, we find it unnecessary to extend the rationale of the *Albright* decision to subsection (e)(5) of the Act.

Accordingly, we affirm the district court's decision insofar as it holds that Clarkson is not entitled to an award of attorney fees under the FOIA and that subsections (e)(1) and (e)(5) of the Privacy Act are not applicable to the instant case. With respect to issue of costs under the FOIA and the alleged violation of (e)(7) of the Privacy Act, we REVERSE and REMAND to the district court for further proceedings consistent with the views expressed in this opinion.

TJOFLAT, Circuit Judge, specially concurring:

I agree that the Privacy Act claims in this case should be remanded to the district court for further consideration; I write sep-

---

**14.** The Senate Report confirms this difference in the scope of protections afforded by the various provisions of section (e) by noting that only certain subsections, including subsection (e)(7), reflect "another dimension of the privacy issue [which prevails] whether or not the information is intended to be used to make decisions about specific individuals." S.Rep. No. 1183, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News 6916, 6960.

**15.** Indeed, it is apparent that if the IRS had intended to rely on these records to make individual determinations, the Act would require these records to be indexed by the name or other identifying particular of the individuals involved. As the OMB Guidelines make clear:

Systems, however, should not be subdivided or reorganized so that information which would otherwise have been subject to the act is no longer subject to the act. For example, if an agency maintains a series of records not arranged by name or personal identifier but uses a separate index file to retrieve records by name or personal identifier it should not treat these files as separate systems.

40 Fed.Reg. at 28963 (1975).

arately to emphasize my understanding of the court's decision.[1]

In addressing the breadth of the exception in subsection (e)(7) of the Privacy Act[2] for records "pertinent to and within the scope of an authorized law enforcement activity," the court holds "that to the extent that the IRS has engaged in the practice of collecting protected information, unconnected to any investigation of past, present or anticipated violations of the statutes which it is authorized to enforce, subsection (e)(7) of the Act has been violated." *Ante*, p. 1375. I agree; subsection (e)(7)'s prohibition against collecting records that describe how an individual exercises his first amendment rights should not be circumvented by fishing expeditions disguised as "law enforcement activity." I wish to emphasize, however, that the district court must have broad discretion in determining whether an agency's record collection is part of a law enforcement activity; in actually reviewing the records and the circumstances surrounding their collection, the district court is in the best position to determine the applicability of the (e)(7) law enforcement exception. Thus, while the determination of the applicability of the exception is a mixed question of law and fact, its factual character predominates and our review of a district court's finding on this issue should so recognize.

The inquiry into the law enforcement exception's relevance in a given case must, of course, depend on the facts and circumstances. In the case before us, the defendant is a tax protester. Tax protesters often set out to violate the law, *see, e.g., United States v. Douglass*, 476 F.2d 260 (5th Cir. 1973), and the IRS may therefore be entitled to greater leeway in maintaining records on their activities. In my view, Clarkson's status as a tax protester is a factor

the district court may consider in determining the exception's applicability. As the court notes, the law enforcement exception was designed "to make certain that political and religious activities are not used as a cover for illegal or subversive activities," *ante*, p. 1374, citing 120 Cong.Rec. H10,892 (daily ed. Nov. 20, 1974). This concern seems especially relevant when the record collection involves tax protesters.

I also add a comment to the court's holding that a plaintiff who proves a subsection (e)(7) violation "may be entitled to have the offending records amended or expunged even if the records are not maintained within the agency's system of records." *Ante*, pp. 1376–1377. On the facts of this case, where the IRS has admitted the existence of (e)(7) material outside of its records system, I agree that Clarkson may be entitled to relief *if* the law enforcement exception is found not to apply. I express no view, however, as to whether a plaintiff's bare allegation that an agency is maintaining records in violation of subsection (e)(7) is sufficient to require the agency to search beyond its system of records for potentially offensive material. I am concerned that such a holding could

> cause an enormous burden to be placed upon agencies that maintain records. For each Privacy Act request, a staff would have to cull and screen the countless, potentially millions of pages of documents, regardless of how labelled, indexed, or stored, in order to discover materials pertaining to the requestor. Such a ruling would be contrary to the purpose of the statute and to sound public policy.

*Grachow v. United States Customs Service*, 504 F.Supp. 632, 636 (D.D.C.1980). Thus, while on the facts of this case Clarkson *may* be entitled to relief, this does not necessarily mean that every plaintiff who alleges

---

**1.** I do not address the issue of costs in the FOIA case or the applicability of subsections (e)(1) and (e)(5) of the Privacy Act.

**2.** 5 U.S.C. § 552a(e)(7) (1976) provides:

(e) ... Each agency that maintains a system of records shall—

.     .     .     .     .

> (7) maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or *unless pertinent to and within the scope of an authorized law enforcement activity.*

(Emphasis supplied.)

agency maintenance of first amendment material will be entitled to a judicially enforced scavenger hunt through that agency's records.

CLARK, Circuit Judge, specially concurring.

I enthusiastically concur in Judge Tuttle's opinion which admirably and painstakingly analyzes a citizen's First Amendment protection of his freedom of speech rights as amplified by the Privacy Act. However, once again I take issue with the holding that a pro se litigant who substantially prevails cannot recover attorney fees, as I did in *Lovell v. Alderete*, 630 F.2d 428, 434 (5th Cir. 1980). I recognize that precedent binds us as a panel and therefore under the law the instant opinion is correct.

Nevertheless, I continue to speak out against an interpretation of the statute that permits reimbursement for money spent for attorney fees but denies it for time spent to accomplish the same result. Time is precious to everyone. Taking time away from gainful employment or enjoyable leisure to enforce one's rights is a valuable consideration for which reimbursement should be obtainable, and is just as much "a stock in trade" as is an attorney's time. There is nothing in the Act or Congressional history to suggest that Congress intended to favor a person with money who could afford an attorney over a poorer person who could not, and who could not enlist free legal services.

Therefore, I register my disagreement with this holding, while recognizing that we as a panel are bound by *Lovell*.