**David A. CONNELLY, Plaintiff,**

**v.**

**COMPTROLLER OF THE CURRENCY, Administrator of National Banks, John Bodnar, In His Official Capacity As Southwestern Comptroller of The Currency and In His Individual Capacity, and Arthur Oliver, In His Official Capacity As Investigator for The Comptroller of The Currency and In His Individual Capacity, Defendants.**

Civ. A. No. H–84–3783.

United States District Court,
S.D. Texas,
Houston Division.

Sept. 15, 1987.

Stuart M. Nelkin, Nelkin and Nelkin, Houston, Tex., for plaintiff.

Hays Jenkins, Jr., Mary Kazaleh Loyd, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

DeANDA, District Judge.

### I.

This action was brought by Plaintiff for declaratory and injunctive relief, and for damages which allegedly occurred as a result of Defendants finding, as officials of the Comptroller of Currency, that Plaintiff was an unsuitable presidential nominee for a newly organized bank seeking charter approval under 12 U.S.C. § 1811 *et. seq.* Defendants have pending a motion for summary judgment. After a careful review of the record, the Court concludes that there are genuine issues of material fact and that Defendants are not entitled to judgment as a matter of law.

### II.

Plaintiff has been employed in the Texas banking community for approximately twenty years. In the fall of 1983, Plaintiff accepted an offer to become the president of the Westwood National Bank, which was in the process of organization. The new bank was to be located in Houston, Texas. In December of 1983, the organizers of Westwood National Bank submitted Plaintiff's name to the Office of the Comptroller General as part of the charter application process. Attached to the application was a "Confidential Biographical and Financial Report" signed by Plaintiff. The purpose of this report was to provide Plaintiff's background information, including educational qualifications, employment history and references.

In response to the Westwood National application, Defendant Oliver, a national bank examiner located in Dallas, Texas, contacted Marcia Oley (formerly Marcia Hale), a category one national bank examiner. Ms. Oley was assisting at Southwest Bancshares with a holding company review of the Bank of the Southwest. Bank of the Southwest was the sponsoring bank over two subsidiary banks, Westbury National Bank (Westbury Bank) and Houston Southwest Bank (Houston Bank). Plaintiff was president of Westbury Bank from 1976 to 1983 and president of Houston Bank for twenty months during 1982 and 1983.

Defendant Oliver asked Ms. Oley to gather what information she could regarding Plaintiff's past performance as president of the two banks. Accordingly, Ms. Oley obtained documents from Southwest Bancshare's loan review department. One of the documents was a monthly report on Houston Bank's loans that showed a number of loans were categorized as "classified." Another document was a monthly watch list report from which it appears Plaintiff had originated a number of loans at Houston Bank which were in the "classified" category at the time of the report. A classified loan is one with "weaknesses" that may need remedial action. No bank-generated loan evaluation documents specifically pertaining to Westbury Bank are in the record before the Court.

Ms. Oley also contacted the office of Mr. McMahen, President of Texas Bankshares. She left a message requesting information about Plaintiff's job performance. Ms.

Oley was later told by her supervisor, Mr. Golden, that Mr. McMahen had called Mr. Golden in response to her message. Mr. Golden told Ms. Oley that Mr. McMahen had conveyed general dissatisfaction with Plaintiff's administrative ability and could not recommend Plaintiff for a chief executive officer position. Ms. Oley, however, never spoke with Mr. McMahen. Ms. Oley then conveyed this information to Mr. Oliver by telephone on January 30, 1986. She indicated she would send Defendant Oliver a memo confirming what she had told him.

The day of his telephone conversation with Ms. Oley, but prior to receiving her memo, Defendant Oliver interviewed Plaintiff. During the course of that interview, Plaintiff was asked about his loan performance at Houston Bank. Plaintiff acknowledged that there had been problems. He stated that many of the problems had originated in the actions of officers and employees prior to his tenure as chief executive officer. There is no evidence in the record that Plaintiff was asked about his loan performance at Westbury Bank.

Based on this interview, and a subsequent memo provided by Ms. Oley, Defendant Oliver drafted a letter for Defendant Bodner's signature. Defendant Bodner was the District Administrator of the Comptroller of the Currency. The letter informed the organizers of the Westwood National Bank that their charter application would not be approved with Plaintiff as president. Other than the statement, "We are of the opinion that Mr. Connelly does not possess the qualifications required for the position of President of Westwood National Bank ...", no reason was given for rejection of Plaintiff's nomination. Defendant Bodner signed this letter, which was sent to the Westwood organizers on May 16, 1984. Some of the evidence in the record suggests that Defendant Bodner signed this letter the same day he received it. *See* Bodner Deposition at Exhibits "4" and "6".

Defendant Oliver stated that he did not contact any of the references provided by Plaintiff; nor did Defendant Oliver re-contact Plaintiff after he received the written information from Ms. Oley. There is no evidence in the record that Plaintiff was ever told that his nomination was in jeopardy because of his loan performance or because of an unfavorable oral evaluation by Mr. McMahen. The organizers of the Westwood Bank told Plaintiff of his rejection by the Office of the Comptroller and then terminated his services as presidential nominee.

### III.

Plaintiff has alleged three primary causes of action. He argues Defendants' determination that he was unfit for the presidency of the Westwood National Bank violated the Privacy Act, 5 U.S.C. § 552a(g)(1), his Due Process Rights under the Fifth Amendment, and, furthermore, that such violations support a request for judicial review under the Administrative Procedure Act, 5 U.S.C. § 701 *et. seq.* (hereafter "APA"). Sections 706(2)(A) and (D) of the APA state that agency actions should be declared unlawful and set aside when they are found to be "... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law ... [or] ... without observance of procedure required by law...." Defendants deny these allegations, and alternatively claim qualified and absolute immunity.

### IV.

Plaintiff first raises the claim that Defendants violated the Privacy Act, specifically Section 552a(g)(1), when they rejected his nomination on the basis of an incomplete and inaccurate record. Contrary to Defendants' assertions, a reviewing court can consider a plaintiff's Privacy Act claim for damages under § 552a(g)(1)(C) regardless of whether the plaintiff has exhausted his administrative remedies. *Hubbard v. U.S. Environmental Protection Agency, Administrator,* 809 F.2d 1, 4 (D.C.Cir.1986). Only when a plaintiff seeks amendment of records under the Privacy Act is there is a requirement of exhaustion of remedies. *Nagel v. United States Dep't of Health Education & Welfare,* 725 F.2d 1438, 1441 (D.C.Cir.1984). A

plaintiff need not exhaust his administrative remedies when those remedies are inadequate. *Patsy v. Florida International University,* 634 F.2d 900 (5th Cir.1981) (en banc), *cert. granted,* 454 U.S. 813, 102 S.Ct. 88, 70 L.Ed.2d 81 (1981). Thus, Plaintiff's Privacy Act claim is properly before this Court.

■ A claim for damages under the Privacy Act, § 552a(g)(1)(C) need not be based on records cued to Plaintiff's name or other personal identifier. *Clarkson v. Internal Revenue Service,* 678 F.2d 1368, 1376 (11th Cir.1982). Defendants cite Sections 552a(d)(1) and 552a(e)(7) in support of their contention that a system of records cued to Plaintiff's name is required before a cause of action exists. These subsections address complaints related to disclosure and access to information. Their purpose is to prevent compilation of erroneous or improper information that others can easily access using an individual's name or personal identifier. Clearly, the explicit restriction to a "system of records" is to prevent the creation of a duty on the part of a defendant to comb its records for mention of a requestor's name, or alternatively, to develop elaborate cross-referencing systems.

The Congressional intent underlying Section 552a(g)(1)(C) is, however, different. In enacting the Privacy Act, Congress stated that the Act was "also to promote observance of valued principles of fairness and individual privacy by those who develop, operate, and administer other major institutional and organizational data banks of government and society." S.Rep. No. 1183, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 6916, 6960. To this end, Sections 552a(e)(5) and 552a(g)(1)(C) place an affirmative duty on an agency to maintain an accurate and complete "record" if that record is to be used to make a determination which may prove adverse to the individual. Section 552a(e)(5) expressly states:

(e) Each agency that maintains a system of records shall—

(5) maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination;

This Court finds persuasive the Eleventh Circuit's interpretation of the congressional intent of this provision. *See Clarkson v. Internal Revenue Service,* 678 F.2d 1368, 1377 (11th Cir.1982). In *Clarkson,* the court found that, "[t]he objective of this provision is to require an agency to take reasonable steps to insure the informational quality of the records which it relies upon in making determinations about an individual." The same interpretation is applicable to Section 552a(g)(1)(C). Section 552a(g)(1)(C) provides civil remedies:

(g)(1) ... Whenever any agency

(C) fails to maintain *any* record concerning an individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in *any* determination relating to the qualifications, character, rights or opportunities of, or benefits to, the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual. [emphasis added].

The Court's first reference must be to the literal meaning of the words employed in these subsections. To hold otherwise would preclude this Plaintiff and others of similar standing from pursuing the Act's remedy for damage directly resulting from egregious Government action. This would not accord with the Congressional intent that the outcome be fair in matters pertaining to government accumulation of records. Therefore, the Court concludes, as a matter of law, that Plaintiff may pursue his cause of action under the Privacy Act on the record in question, even though that record is not cued to Plaintiff's name or personal identifier within a larger system of records.

■ Genuine issues of material fact have been raised as to whether Defendants violated the Privacy Act by acting unreasonably, intentionally or willfully when they failed to more fully investigate Plaintiff's performance. Reasonableness is

evaluated by balancing the likelihood that lack of accuracy, timeliness, relevancy or completeness will harm a plaintiff against the relative cost to the defendant in terms of the effort needed to avert such harm. *Edison v. Dep't of the Army*, 672 F.2d 840, 843 (11th Cir.1982). Plaintiff contends that he would have received a favorable determination on his nomination had Defendants compiled a more complete and accurate record.

There is evidence in the record which arguably should have triggered further investigation. Defendant Oliver stated that his evaluation of Plaintiff's suitability was negative, in part, because Plaintiff told him that some of the loan problems originated prior to his tenure. *See* Oliver Depo. p. 46. Defendant Oliver, however, possessed a document, prior to his decision, that supported Plaintiff's application. A Southwest Bancshare's memorandum in the record evaluated Plaintiff's loan performance at Houston Bank. After stating Plaintiff's performance was adequate, the writer observed "Many of the problems in the bank's loan portfolio originated prior to Mr. Connelly's arrival." See Oliver's Depo., Exhibit "2." This same memorandum limited criticism of Plaintiff's management skills to the statement that the evaluator found "... Mr. Connelly's primary weakness to be a lack of adequate emphasis on complete and orderly credit files." Finally, Defendants' reliance on a third-hand, negative performance evaluation may have been unwarranted given that Plaintiff expressly noted his difficulties with the person offering the evaluation. Thus, a genuine issue of material fact exists as to whether Defendants' decision not to further investigate was unreasonable, willful or intentional under the Privacy Act.

■ To support a cause of action under the Privacy Act, at 5 U.S.C. § 552a(g)(1)(C), a plaintiff must allege and show actual or threatened injury. The courts have stated that a contract for employment constitutes a legitimate claim of entitlement. *American Federation of Gov't Employees, AFL–CIO v. Stetson*, 640 F.2d 642, 645 (5th Cir.1981). In the instant case, Plaintiff had

a contractual relationship with the organizers of Westwood National Bank. Additionally, Plaintiff claims that Defendants' decision damaged his reputation in the banking community by limiting Plaintiff's opportunity to naturally advance in his career. Thus, Plaintiff has properly alleged injury due to Defendants' violation of the Privacy Act.

■ Plaintiff next raises a cause of action under the Fifth Amendment clause. This cause of action initially depends upon the finding of a property or liberty interest. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed. 2d 548 (1972). To support the claim that he suffered harm to a property interest, Plaintiff offers a letter of agreement which, in addition to discussing specific salary terms, states that he will be elected president of Westwood National Bank. The letter is signed by the Chairman of the Board of Texas Capital Bancshares. Plaintiff's signature appears on this document below the word "ACCEPTED." There is a constitutional "right to hold specific private employment—free from unreasonable governmental interference." *Greene v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959). *See also, Phillips v. Bureau of Prisons*, 591 F.2d 966 (D.C.Cir. 1979). Arguably, Plaintiff's contractual relationship established a constitutionally protected property interest.

■ Plaintiff also claims that his reputation and future employment opportunities were liberty interests damaged by Defendants' actions. Liberty interests exist in an individual's reputation and in future employment opportunities. *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). To support a claim of injury to his reputation, Plaintiff offers an affidavit from Lawrence Fraser, Chairman of Texas Capital Bancshares. Mr. Fraser attested that Plaintiff's reputation in the banking community was "greatly harmed" as a result of the Comptroller's decision. Mr. Fraser also attested that he had "personal knowledge that ... [Plaintiff's] ... ability to secure employment ... particularly as president of a bank, has

been severely impaired." Thus, a genuine issue of material fact has been raised as to whether Plaintiff suffered damage to his property and liberty interests.

■ The Court next considers whether due process was, as a matter of law, accorded to Plaintiff. It has been expressly held that the Due Process Clause of the Fifth Amendment applies to the actions of federal administrative agencies. *Wong Yang Sung v. McGrath*, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950). The Court in *McGrath* based its decision on the principle that "[t]he constitutional requirement of procedural due process of law derives from the same source as Congress' power to legislate and, where applicable, permeates every valid enactment of that body." *Id.* at 49, 70 S.Ct. at 454. Thus, a plaintiff may rightfully assert a due process claim whenever agency action adversely affects the due process protection accorded to a person's liberty and property interests. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

■ Defendants erroneously assert that the National Banking Act regulations provided adequate due process protection to Plaintiff. The provisions cited by Defendants state that the Comptroller has discretion to grant a request for a hearing on a charter application provided the request occurs within the thirty (30) day period following the charter applicants' public notice that they intend to organize a bank. Banks and Banking, 12 C.F.R. § 5.10 (1984). The regulations further provide that, once an application is rejected, the Comptroller must entertain requests to reconsider its disapproval. Banks and Banking, 12 C.F.R. § 5.13 (1984). Neither of these regulations provides due process protection to individuals in Plaintiff's situation.

First, rejection of Plaintiff's nomination came long after the 30 day period set out in 12 C.F.R. § 5.10. Second, the charter applicants presumably terminated Plaintiff's services and hired his replacement prior to the Comptroller's final decision on the charter application. Arguably, even if 12 C.F.R. § 5.13 were construed as a means of redress for Plaintiff, appeal would have been possible only if, and when, the application was disapproved. Defendants state that under these regulations, the "agents" of Plaintiff (the charter applicants) could have appealed on Plaintiff's behalf. Defendants contend that the charter applicants could have refused to comply with the Comptroller's request that they find another nominee, thus forcing the Comptroller to reject their application so that they could then appeal rejection of Plaintiff's nomination. Even if this scenario were to comport with the regulations, it is unreasonable to think that investors would so jeopardize and delay their application for Plaintiff's benefit. Plaintiff's nomination may have been of minor concern to those involved in setting up the new bank.

More fatal to Defendants' theory is the fact that it is clear that the regulations are intended to provide charter applicants, and members of the public wishing to comment on the application, an opportunity to be heard. The regulations are completely silent on the due process rights of nominees rejected during the application process. Therefore, the Court is compelled to consider whether the procedures accorded Plaintiff met minimal constitutional due process standards.

■ Defendants are correct in asserting that the Comptroller is not required to hold a hearing on a bank's charter application as a whole. *Bank of Commerce Laredo v. City National Bank of Laredo*, 484 F.2d 284 (5th Cir.1973), *cert. denied*, 416 U.S. 905, 94 S.Ct. 1609, 40 L.Ed.2d 109 (1974). By implication, neither is the Comptroller required to hold a hearing on the portion of this bank's charter application pertaining to Plaintiff's nomination. However, absence of a mandatory hearing requirement does not mean that Plaintiff is not entitled to minimal due process when his liberty or property interests are threatened.

■ The minimal due process to which a plaintiff is entitled includes the right to timely and adequate notice; the

opportunity to confront adverse witnesses; and, to present oral evidence when there are issues of material fact to be resolved. *Goldberg v. Kelly,* 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970); *NLRB v. J.C. Penney Co.,* 559 F.2d 373 (5th Cir.1977). Such a hearing need entail no more than an opportunity for the individual to tell his side of the story. *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed. 2d 725 (1975). However, a plaintiff must be accorded due process "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). Plaintiff contends that because of the sequence of events, he was neither confronted with evidence against him nor granted an opportunity to rebut that evidence.

Nothing in the record indicates Plaintiff knew his nomination was at risk or that there were specific allegations pertaining to his suitability. Defendant Oliver testified in deposition that he received specific allegations concerning Plaintiff's loan practices after he had interviewed Plaintiff. It appears that Plaintiff's only opportunity to "tell his side of the story" came when he was asked general questions about his loan practices and then given the opportunity to rebut the negative information that he himself had volunteered. The record does not show that Plaintiff ever knew his suitability was in question until he was told by the charter applicants that his services were terminated because his nomination had been rejected.

Nor was Plaintiff accorded a post-deprivation opportunity to be heard. Defendants assert that the May 16, 1984, letter from Defendant Bodnar to Larry Temple, agent for the applicants, gave Plaintiff an opportunity to be heard. This claim is unsupportable. The letter's first paragraph stated that the Comptroller would not approve Plaintiff's election as president of the newly organized bank. The second paragraph instructed the organizers to submit an alternative nominee and detailed the submission process they were to use. This paragraph closed with the statement, "It should be pointed out that it is the responsibility of the Board of Directors to assure this Office that the elected management is qualified to organize and operate a sound national bank." A short closing paragraph told the organizers to, "[Please] contact Margaret M. Spellman ... should you have any questions." At best, it is ambiguous whether this last statement notifies the organizers of their right to be heard on the issue of the rejection of their nominee. Given the regulatory provisions cited above, this construction seems to controvert the Comptroller's own regulations. More logical is the interpretation that the statement was intended to inform the organizers of whom to contact should they need help in properly submitting their alternate nominee. Regardless, the Court cannot find that, as a matter of law, this letter provided Plaintiff with notice of his right to a post-deprivation hearing. Thus, a genuine issue of material fact exists as to whether Plaintiff was accorded due process, or alternatively, whether the due process afforded him was offered at a meaningful time and in a meaningful manner.

■ Plaintiff also seeks judicial review under the Administrative Procedures Act, 5 U.S.C. § 701 *et. seq.* Judicial review of the Comptroller's action is appropriate at this time. The Supreme Court has held that review is proper when the agency action appears final and no evidence exists to suggest that review will disrupt an on-going administrative process. *Bell v. New Jersey and Pennsylvania,* 461 U.S. 773, 103 S.Ct. 2187, 76 L.Ed.2d 312 (1983). The Court's scope of review is limited to whether the Comptroller's actions were arbitrary, capricious, or an abuse of discretion, or otherwise not in accord with the law. *Camp v. Pitts,* 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).

■ As stated earlier, genuine issues of material fact exist supporting Plaintiff's causes of action under the Privacy Act and the Due Process clause. Consequently, Plaintiff has raised a genuine issue of material fact as to whether Defendants' decision was made in accord with the law, or with proper observance of procedure. If Plaintiff proves violations of these two

clauses, then Plaintiff may be entitled to remedy under the APA for agency actions which were "not in accordance with the law ... [or] ... without observance of procedure required by law...." 5 U.S.C. § 706(2)(A) and (D). For that reason, summary judgment on this issue would be inappropriate at this time.

■■■■ Finally, Defendants raise the defense that they are entitled to absolute or qualified immunity in their individual capacities. While officers of a governmental agency who perform judicial or prosecutorial functions may have absolute immunity, all other officers have only qualified immunity. *Butz v. Economou*, 438 U.S. 478, 495, 98 S.Ct. 2894, 2905, 57 L.Ed.2d 895 (1978). In *Economou*, the Supreme Court said that officials, "... even when acting pursuant to congressional authorization, are subject to the restraints imposed by the Federal Constitution." *Id.* at 495, 98 S.Ct. at 2905. Thus, under *Economou* an official, "... would not be excused from liability if he failed to observe obvious statutory or constitutional limitations on his powers or if his conduct was a manifestly erroneous application of the statute." *Id.* at 494, 98 S.Ct. at 2904. A plaintiff must plead specific facts underlying his claim that public officials violated his clearly established constitutional rights. *Elliott v. Perez*, 751 F.2d 1472 (5th Cir.1985). Once a plaintiff meets this threshold pleading requirement, the burden shifts to the defendant to show that he could not be expected to know of the applicable laws or that extraordinary circumstances kept him from knowing of the applicable laws. *Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

In the instant case, Plaintiff pleads sufficient facts establishing a cognizable claim under the Privacy Act, the Fifth Amendment and the Administrative Procedures Act. Furthermore, he detailed the specific actions and inactions of Defendant which he alleges give rise to his constitutional claim. Thus, unlike the plaintiff in *Elliott*, this is not a case of blanket or "blunderbuss" general allegations in Plaintiff's pleadings.

■■■■ Summary judgment is, however, "readily available to public official defendants whenever the state of law is so ambiguous at the time of the alleged violation that it could not have been 'known' to them, and thus liability could not ensue." *Harlow v. Fitzgerald*, 457 U.S. at 821, 102 S.Ct. at 2740 (Brennan, J. concurring). No facts have been alleged or presented which, if true, would establish that Defendants knew they were violating Plaintiff's rights. The immunity question before the Court is thus narrowed to whether Defendants reasonably should have known their actions might violate Plaintiff's statutory or constitutional rights. Mere violation of a statute or legal right does not necessarily mean the official's actions are unreasonable. *Anderson v. Creighton*, —— U.S. ——, 107 S.Ct. 3034, 3041, 97 L.Ed.2d 523 (1987). Furthermore, qualified immunity is to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

The ultimate question in the immunity issue is whether Defendants should have reasonably known they were violating Plaintiff's due process rights. Here, Defendants contend that Plaintiff was accorded a "hearing" in that Defendant Oliver spoke with Plaintiff and allowed Plaintiff the opportunity to voluntarily disclose any circumstance that might touch upon Plaintiff's suitability as a nominee. Plaintiff was not confronted with, nor given an opportunity to rebut, the evidence weighing against him. In practice, Defendants' theory of due process would mean that public officials could satisfy constitutional requirements merely by asking an individual to confess his failings or insufficiencies and then subsequently depriving that individual of constitutionally protected rights if his confession proves unsatisfactory. The Court finds that Defendants have not shown that they reasonably could not know of Plaintiff's constitutional due process rights. Thus, the Court cannot grant summary judgment on a finding that Defendants, in their individual capacities, have

qualified immunity as to Plaintiff's constitutional claim.

## V.

The Court ORDERS Defendants' motion for summary judgment is DENIED.