Michael T. ALBRIGHT et al., Appellants,

v.

UNITED STATES of America et al.

No. 79–1526.

United States Court of Appeals, District of Columbia Circuit.

Argued April 1, 1980.

Decided July 17, 1980.

Rehearing Denied Oct. 29, 1980.

---

John I. Heise, Jr., Silver Springs, Md., with whom John P. Rhody, Jr., Silver Springs, Md., was on the brief, for appellants.

Michael J. Ryan, Asst. U. S. Atty., with whom Carl S. Rauh, U. S. Atty.*, John A. Terry and Michael W. Farrell, Asst. U. S. Attys., were on the brief, for appellees.

Before TAMM and MIKVA, Circuit Judges, and JOYCE HENS GREEN **, United States District Judge for the District of Columbia.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

The Privacy Act forbids any government agency that "maintains a system of records" from maintaining, collecting, using, or disseminating any record of the exercise of an individual's First Amendment rights. This case raises the issue whether an agency may make and keep such a record even if it is not subsequently incorporated into the

---

* United States Attorney at the time the brief was filed.

** Sitting by designation pursuant to 28 U.S.C. § 292(a).

agency's system of records. The district court held that incorporation is necessary to trigger the applicability of the Act. We hold that the district court erred in its reading of the Act, and consequently we reverse.

## I. BACKGROUND

Appellants are career Hearing and Appeal Analysts with the Bureau of Hearings and Appeal, Social Security Administration, United States Department of Health, Education and Welfare.[1] In the spring of 1977, several analysts were recommended for promotion to the GS–301 Grade, level 13. However, a subsequent classification determination by the Bureau's personnel division resulted in the downgrading of the GS–13 level positions to the GS–12 level. As a result, twenty-four analysts were denied the recommended promotions.

In order to explain the reclassification decision, R. Brian Makoff, the personnel officer responsible for the decision, called a meeting with the affected analysts. At the meeting, held in the Bureau's offices during business hours, there was a presentation by Makoff, followed by questions and answers and what has been described as a "heated exchange" between the analysts and Makoff. Although not announced to those present, the room in which the meeting was conducted contained videotaping equipment which was used to record the meeting. Afterwards the videotape was labeled "9/23/77, Brian Makoff Classification Address to Analysts" and placed in a locked file in the Bureau's office.

Having learned that the meeting had been videotaped, the analysts' union brought an unfair labor practice charge,[2]

and thereafter the tape was removed to a security branch office in Baltimore, Maryland. It is presently kept in a locked filing cabinet in a sealed envelope addressed to the chief of the security branch and marked "Confidential, Open by Addressee Only." The videotape has since been viewed on limited occasions in connection with this and the unfair labor practice proceeding.[3]

The analysts, after exhausting their administrative remedies, brought an action in the district court for monetary, declaratory, and injunctive relief, alleging a violation of subsection (e)(7) of the Privacy Act of 1974, 5 U.S.C. § 552a(e)(7) (1976), and violations of the First and Fourth Amendments. The parties brought cross motions for summary judgment which the trial judge denied as to the constitutional claims on the ground that material facts were in dispute. But as to the Privacy Act claim, the judge ruled that the plaintiffs failed to state a cause of action because the videotape was not incorporated into the agency's "system of records," as that term is defined in the Act. The district court concluded that in the absence of incorporation, the Act was inapplicable to the agency's actions; the court therefore granted summary judgment to defendants. The parties stipulated to a final order in which the analysts agreed to dismiss their remaining claims, paving the way for the present appeal from the grant of summary judgment.

## II. DISCUSSION

### A. *Interpretation of the Act*

Subsection (e)(7) of the Privacy Act, under which the claim in this case was filed, provides in pertinent part:

1. The Department of Health, Education and Welfare has been redesignated as the Department of Health and Human Services, 20 U.S. C.A. § 3508 (Supp.1980).

2. Federal employees are permitted to organize and file unfair labor practice charges under Exec. Order No. 11491, 3 C.F.R. 861 (1966–1970 Compilation). Among the unfair labor practices defined by that order is "interfer[ing] with, restrain[ing], or coerc[ing] an employee in the exercise of the rights assured by this Order." *Id.* at § 19(1), 3 C.F.R. at 872. This wording is analogous to that of § 8(a)(1) of the

National Labor Relations Act, 29 U.S.C. § 158(a)(1) (1976), which has consistently been read to prohibit employer surveillance of employee union activities that reasonably tends to coerce employees in the free exercise of their rights. *See, e. g., NLRB v. Intertherm, Inc.,* 596 F.2d 267, 273 (8th Cir. 1979); *Hedstrom Co. v. NLRB,* 558 F.2d 1137, 1144 & n.18 (3d Cir. 1977).

3. A copy of the videotape was provided to the analysts' union pursuant to a request it filed in 1977 under the Freedom of Information Act.

(e) . . . Each agency that maintains a system of records shall—

. . . . .

(7) maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity.

5 U.S.C. § 552a(e)(7).

The Act defines a "record" as

any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

5 U.S.C. § 552a(a)(4).

A "system of records" is defined as

a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual.

5 U.S.C. § 552a(a)(5).

"Maintain" is defined to include "maintain, collect, use, or disseminate." 5 U.S.C. § 552a(a)(3).

In its interpretation of the statute, the district court emphasized that the prohibition against collecting records of First Amendment activities is, by the terms of subsection (e), applicable only to agencies that maintain a system of records. The court therefore inferred that subsection (e)(7)'s regulation of collection of records "pertains to records collected *with the intent to incorporate* them into the agency's system of records." Mem. op. at 4 (emphasis in original). That is, the court held, "Congress intended there be a nexus between the record collected (maintained,

used or disseminated) and the system of records maintained by the agency before the Privacy Act would apply." *Id.* at 5. The court reasoned that if "the mere collection of records of individuals exercising their first amendment rights were the primary concern of Congress, it would have prohibited the collection of such records by *any* agency, not just those that maintain a system of records." *Id.* (emphasis in original).

The district court found that the videotape in this case was not, and was never intended to be, indexed according to the name or other identifying symbol of any of the analysts filmed. The court thus concluded that the record was not incorporated into the agency's system of records[4] and consequently that the actions of the Bureau and Makoff in making the videotape did not fall within the subsection (e)(7) prohibition.

 We do not agree with the district court's reading of the statute. The meaning of a statute must, in the first instance, be sought in the language of the statute itself. If the language is clear and unambiguous, a court must give effect to its plain meaning. *United States v. Clarke*, 445 U.S. 253, 254, 100 S.Ct. 1127, 1128, 63 L.Ed.2d 373 (1980); *Caminetti v. United States*, 242 U.S. 470, 485–86, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917); *Zerilli v. Evening News Ass'n*, 628 F.2d 217, 220, No. 79–1298 (D.C.Cir.1980). The definition of "maintain" is the dispositive factor here. Subsection (e)(7) provides that any agency that maintains a system of records shall not "maintain [collect, use, or disseminate any] record describing how any individual exercises rights guaranteed by the First Amendment." When so read, the Act clearly prohibits even the mere collection of such a record, independent of the agency's maintenance, use, or dissemination of it thereafter. The district court's interpretation is thus inconsistent with the plain meaning of the language of the Act.

Our reading of the Act is also consistent with what we perceive to be the congres-

**4.** There is no dispute that the Bureau is an agency that maintains a system of records.

sional intent. Congress is, of course, well aware of the special and sensitive treatment accorded First Amendment rights under the interpretive case law. *See, e.g., Cohen v. California,* 403 U.S. 15, 24–25, 91 S.Ct. 1780, 1787–88, 29 L.Ed.2d 284 (1971); *New York Times Co. v. Sullivan,* 376 U.S. 254, 270–72, 84 S.Ct. 710, 720–21, 11 L.Ed.2d 686 (1964); *Kovacs v. Cooper,* 336 U.S. 77, 88, 69 S.Ct. 448, 454, 93 L.Ed. 513 (1949) (referring to the "preferred position" of freedom of expression). The legislative history of the Act reveals Congress' own special concern for the protection of First Amendment rights, as borne out by statements regarding "the preferred status which the Committee intends managers of information technology to accord to information touching areas protected by the First Amendment of the Constitution." S.Rep. No. 1183, 93d Cong., 2d Sess., *reprinted in* [1974] U.S. Code Cong. & Admin. News, pp. 6916, 6971. Thus, while other types of information may be "maintained" under the Act, there is a flat prohibition (with very limited exceptions) against maintenance of records regarding the exercise of First Amendment rights. A requirement of incorporation, such as that imposed by the district court here, adds an ingredient that Congress did not provide. Information about an individual's exercise of his or her First Amendment rights can be retrieved even from records that are not incorporated into an agency's system of records and that do not identify that person by name.

The legislative history also reveals a concern for unwarranted collection of information as a distinct harm in and of itself. "[T]he section is directed to inquiries made for research or statistical purposes which,

even though they may be accompanied by sincere pledges of confidentiality are, by the very fact that government make [*sic*] the inquiry, infringing on zones of personal privacy which should be exempted from unwarranted Federal inquiry." S.Rep. No. 1183, [1974] U.S. Code Cong. & Admin. News at 6971–72.

Similarly, although not expressly provided for in the Constitution, courts have long recognized that "the First Amendment has a penumbra where privacy is protected from governmental intrusion." *Griswold v. Connecticut,* 381 U.S. 479, 483, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965). This penumbra of privacy can be invaded, under certain circumstances, by the mere inquiry of government into an individual's exercise of First Amendment rights. *See Buckley v. Valeo,* 424 U.S. 1, 64, 96 S.Ct. 612, 656, 46 L.Ed.2d 659 (1976) ("compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment"); *Gibson v. Florida Legislative Investigation Committee,* 372 U.S. 539, 544, 83 S.Ct. 889, 893, 9 L.Ed.2d 929 (1963); *Talley v. California,* 362 U.S. 60, 64, 80 S.Ct. 536, 538, 4 L.Ed.2d 559 (1960); *NAACP v. Alabama,* 357 U.S. 449, 461–63, 78 S.Ct. 1163, 1171–72, 2 L.Ed.2d 1488 (1958) ("compelled disclosure of affiliation with groups engaged in advocacy may constitute . . . effective . . . restraint on freedom of association"). Thus it is not surprising that Congress would have provided in this Act, dedicated to the protection of privacy, that an agency may not so much as collect information about an individual's exercise of First Amendment rights except under very circumscribed conditions.[5]

---

5. The Office of Management and Budget's (OMB) Privacy Act Guidelines, promulgated pursuant to § 6 of the Privacy Act, Pub.L. No. 93–579, 88 Stat. 1896 (1974), also support our reading of the scope of subsection (e)(7). 40 Fed.Reg. 28949 (1975). The guidelines compare subsection (e)(7) with subsection (e)(1), which provides that an agency maintaining a system of records shall

> maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency

> required to be accomplished by statute or by executive order of the President.

5 U.S.C. § 552a(e)(1). OMB reads "maintain" in this subsection to mean "collect" and then goes on to note that subsection (e)(7) "establishes an even more rigorous standard governing the maintenance of records regarding the exercise of First Amendment rights." 40 Fed. Reg. at 28965. As another indication of subsection (e)(7)'s intended scope, the guidelines admonish agencies to "apply the broadest reasonable interpretation" in determining whether

We are not persuaded. that a contrary congressional intent is revealed by the fact that the subsection (e)(7) prohibition is made applicable only to agencies that maintain a system of records. First, Congress need not treat every aspect of a problem in order to address any aspect of it. *See Katzenbach v. Morgan*, 384 U.S. 641, 657, 86 S.Ct. 1717, 1727, 16 L.Ed.2d 828 (1966); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). Furthermore, it would appear from the statement of purpose in the legislative history that the Act was intended to cover all of what were perceived to be the offending agencies. "The purpose of [the Act], as amended, is to promote governmental respect for the privacy of citizens by requiring all departments and agencies of the executive branch and their employees to observe certain constitutional rules in the computerization, collection, management, use, and disclosure of personal information about individuals." S.Rep. No. 1183, [1974] U.S. Code Cong. & Admin. News at 6916.

In reaching its contrary decision, the district court relied heavily on another district court opinion, *Denson v. Alexander*, No. 76–L–1332–S (N.D.Ala. Feb. 2, 1977). That case involved an Internal Revenue Service employee's request to have certain information deleted from a form used in evaluating his application for a higher-paying position in the IRS. The form in question was filed under a category accessible only by the name of the position to be filled.

The *Denson* court held that the provisions of the Privacy Act requiring an agency to permit access to and correction of a record pertaining to an individual contemplated that the record in question be incorporated into the agency's system of records. While expressing no view on the correctness of that decision, we do note that *Denson* was concerned with accessing and correcting records that were properly in the possession of the agency. The issue before us has to do with a prohibition against the very collection of records of the exercise of First Amendment rights. It is apparent that if the mere collection constitutes a violation, no purpose can be served by also requiring a "nexus" between the record and the system of records in which it might or might not be stored. We thus find the district court's reliance on *Denson* in its decision below to be misplaced.

### B. Applicability of the Act to This Case

■ Having determined that the district court erred in requiring a special nexus between a record of First Amendment activities and the agency's system of records, we must turn to an examination of whether the agency violated the Act by making the videotape of the meeting with the analysts. The threshold issue in this regard is whether the videotape is a record of the exercise of First Amendment rights. We do not think the fact that the means of storing information in this case was a videotape makes it any less a record for purposes of the Act. *See Save the Dolphins v. United States Department of Commerce*, 404 F.Supp. 407, 410–11 (N.D.Cal.1975) (holding that a motion picture film is a record for purposes of the Freedom of Information Act, 5 U.S.C. § 552 (1976)). As long as the tape contains a means of identifying an individual by picture or voice, it falls within the definition of a "record" under the Privacy Act.

■ As to the content of the videotape, the analysts maintain that it depicts them questioning the Bureau's action and complaining of it in a heated fashion. Such complaining falls within the First Amendment rights of public employees. *See Bran-*

---

or not an activity constitutes the exercise of a First Amendment right. *Id.* These guidelines are owed the deference usually accorded interpretation of a statute by the agency charged with its administration, particularly when, as here, the regulation " 'involves a contemporaneous construction of a statute by the [persons] charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new.' " *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978) (quoting *Norwegian Nitrogen Prods. Co. v. United States*, 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796 (1933)).

*ti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Givhan v. Western Line Consolidated School Dist.*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Tygrett v. Barry*, 627 F.2d 1279 (D.C.Cir.1980). More specifically, "a petition by a federal employee to one above him in the executive hierarchy is covered by the First Amendment." *Swaaley v. United States*, 376 F.2d 857, 863, 180 Ct.Cl. 1 (1967); *accord, Givhan*, 439 U.S. at 415–16, 99 S.Ct. at 696; *Pilkington v. Bevilacqua*, 439 F.Supp. 465, 472–76 (D.R.I.1977), *aff'd per curiam*, 590 F.2d 386 (1st Cir. 1979). Here, the videotape showed employees complaining to their employer about work-related grievances. It thus is a record of the exercise of First Amendment rights, and its creation violates subsection (e)(7) unless the agency can establish that one of the exceptions stated therein was met.

It is clear that no such exceptions apply in this case.[6] The agency concedes that no statute expressly authorizes the making of the videotape. It is also undisputed that the participants in the meeting did not expressly consent to the videotaping, nor is there any assertion by the agency that the record was made in connection with an authorized law enforcement activity. Thus, it would appear that the analysts do state a viable claim of a violation of subsection (e)(7).

This does not mean that the analysts must necessarily prevail on their claim below. First, there is some disagreement between the parties as to which, if any, of the analysts participating in this appeal were depicted by voice or picture in the videotape. Although we hold that if the voices or pictures were depicted, the videotape would constitute a record under the Act, we cannot, on the facts presented, determine whether such was the case.

Second, in order to establish jurisdiction in the district court, the analysts would have to show that the making of this record had an adverse effect on them as required

by subsection (g)(1)(D) of the Act. The analysts argue that they "properly alleged the adverse effect to them [in their complaint] since among other things . . . [they] have been identified as malcontents within the Agency. Accordingly, their promotion, transfer and assignment opportunities have been adversely affected." Appellants' Reply Brief at 5. However, they concede that the district court did not rule on this question because of its holding that the Act was not applicable. *Id.* at 3.

Finally, in order to be entitled to the damage remedy they seek, the analysts must establish that "the agency acted in a manner which was intentional or willful." 5 U.S.C. § 552a(g)(4). The agency argues that its action was based on its desire to preserve a record of the meeting for other analysts affected by the classification decision who were unable to attend. The agency asserts that the idea to record the meeting actually came initially from one such analyst. The agency points out that it volunteered to destroy the tape when it became aware that the analysts were upset about its having been made, but the offer was refused by the analysts' union.

If these assertions are found to be true, we have serious doubts whether the agency action was a willful and intentional violation of the Act which would justify the assessment of damages. However, we are not in a position to decide this question. The factual disputes existing in this case must be decided by the district court on remand. Of course, even if the analysts are not entitled to damages, they may nevertheless be awarded some other remedy, such as destruction of the videotape.

## III. CONCLUSION

We hold that despite the absence of a nexus between the record and the agency's system of records, the Act applies to the videotape in this case. Since a number of factual questions must be resolved before a complete disposition of the case may be accomplished, we remand to the district

---

**6.** *See* text of subsection (e)(7), quoted in full *supra*.

court for further proceedings consistent with this opinion.

*Reversed and remanded.*