Donald W. MacPHERSON,
Plaintiff-Appellant,

v.

INTERNAL REVENUE SERVICE and
Department of Justice,
Defendants-Appellees.

No. 85–2576.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 14, 1986.

Decided Oct. 24, 1986.

Donald W. McPherson, MacPherson & McCarville, P.A., Phoenix, Ariz., for plaintiff-appellant.

Jonathan Cohen, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

Before GOODWIN, HUG and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Plaintiff Donald W. MacPherson (MacPherson) appeals from a summary judgment entered by the district court on his claims that the IRS violated his rights under the Privacy Act, 5 U.S.C. § 552a(b), (e)(1), and (e)(7) (1982). We affirm.

## FACTS

The parties have detailed their respective versions of the facts at length in their briefs. Only a few facts, however, are relevant to the issue presented in this appeal, and those are undisputed.

Over the course of several years in the early 1980's, the IRS conducted surveillance of individuals and organizations it felt were connected with the "tax protester" movement. As part of this surveillance, IRS agents anonymously attended several conferences and conventions at which MacPherson was a speaker. The agents took notes of MacPherson's speeches and purchased tapes (later transcribed) of these speeches that were for sale by the sponsoring organizations. These notes and tapes were maintained in a "Tax Protest Project File" in the Phoenix and Houston district offices of the IRS. The materials in the file were later distributed to IRS offices in Denver, Austin, and Fort Worth, to the Department of Justice, and to third parties (defendants and counsel in a criminal trial).

The surveillance was intended to identify to the IRS the leaders of the tax protest organizations and to determine current tax protester strategies. Investigation of several specific individuals has been initiated as a result of the surveillance at issue.

The surveillance did not reveal any illegal conduct by MacPherson, and MacPherson is not suspected or accused of any past, present, or anticipated illegal conduct or of the advocacy of illegal acts or violence.

On learning of the IRS file materials from an unidentified third party, MacPherson filed suit alleging seven counts of violation of the Privacy Act, 5 U.S.C. § 552a. After extensive discovery, MacPherson and the IRS filed cross-motions for summary judgment on three of the counts, involving maintenance of records of First Amendment activities, 5 U.S.C. § 552a(e)(7), maintenance of records irrelevant to agency purposes, 5 U.S.C. § 552a(e)(1), and improper disclosure of records, 5 U.S.C. § 552a(b). The district court denied MacPherson's motion and granted the government's motion. MacPherson voluntarily dismissed the remaining counts and timely appealed. This court has jurisdiction under 28 U.S.C. § 1291 (1982).

## STANDARD OF REVIEW

This court reviews a grant of summary judgment de novo. Lojek v. Thomas, 716 F.2d 675, 677 (9th Cir.1983). We must determine whether there is any genuine issue of material fact and whether the substantive law was correctly applied. Id.

## DISCUSSION

Among its various provisions, the Privacy Act prohibits government agencies from collecting and maintaining certain kinds of information about individuals except under certain circumstances. The provision involved here, section 552a(e)(7),[1] states:

(e) *Agency Requirements.*—Each agency that maintains a system of records shall—

. . . . .

(7) maintain no record describing how any individual exercises rights guaran-

1. The parties agree that the other two counts on which summary judgment was granted, involving sections 552a(b) (distribution of records) and 552a(e)(1) (records irrelevant to agency purpose), are derivative of the sec-

tion (e)(7) count. The government does not otherwise contest the violation of those sections, and the portions of the appeal based on sections (b) and (e)(1) thus succeed or fail with the portion based on section (e)(7).

teed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity....

Section 552a(a)(4) defines a record as:

any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

Section 552a(a)(5) defines a "system of records" as:

a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual....

### A. Applicability of Subsection (e)(7)'s General Prohibition

█ Before we may address the issue of the "law enforcement activity" exception, we must determine whether the materials in question fall within the general proscription of section (e)(7): are they records kept by an agency that maintains a system of records? The materials involved here clearly constitute "records": they contain MacPherson's name and include actual tape recordings of his voice. The parties agree that the government records describe how MacPherson "exercises rights guaranteed by the First Amendment." It is also undisputed here that the IRS and the Justice Department are each an agency that maintains "a system of records."

The defendants contend, however,[2] that the records do not fall within the scope of section (e)(7) because the records are not incorporated into the agencies' systems of records; that is, they are not traceable or retrievable by MacPherson's name or other identifying particular. Unlike many provisions of the Privacy Act, however, section (e)(7)'s coverage is not limited to records that are in a "system of records" traceable by the individual's name or some other characteristic. *Cf., e.g.,* 5 U.S.C. § 552a (a)(5). Section (e)(7) requires only that the record be maintained by an agency that *keeps* a system of records, not that the record be a *part* of that system. *See Albright v. United States,* 631 F.2d 915, 918–20 (D.C.Cir.1980); *see also Clarkson v. IRS,* 678 F.2d 1368, 1372–77 (11th Cir.1982). The *Albright* and *Clarkson* opinions examine the language, history, and purpose of section (e)(7) at length, and we see no need to repeat their analysis here. We agree with their reasoning and with their conclusion that records such as those involved in this case fall within the general proscription of section (e)(7) despite a lack of incorporation into an agency's system of records. A contrary conclusion would allow government agencies to evade the section's prohibition simply by keeping individual records in a collective file untraceable by name but identifiable by nature and content of First Amendment exercise. Such a practice clearly goes against the spirit of the Privacy Act in general and section (e)(7) in particular. Because this is the only disputed issue with regard to the applicability of the general proscription of section (e)(7), we conclude that the records at issue are within that proscription and we proceed to consider its exceptions.

### B. Applicability of Law Enforcement Purposes Exception

The government contends that section (e)(7)'s general proscription is inapplicable to the records in question because they are "pertinent to and within the scope of an

---

**2.** The district court assumed without deciding that the materials in question were "records" within the definition of the Privacy Act, and the government does not argue the issue on this appeal. Nevertheless, the government also states that it does not concede the issue, so we address it here.

authorized law enforcement activity." [3] This presents a question of first impression in this circuit.

The district court concluded that:

the essential question with respect to the exemption, subsection (e)(7), is whether the investigation record is relevant to an authorized investigation and that there is no requirement that the investigation relate to a specific criminal act or to a specific individual.

Under this standard, the district court found that the records fall within the exception.[4]

MacPherson argues that "law enforcement activities" within section (e)(7) must involve investigation of a specific violation of the law, and that the IRS thus should not have kept records of his speeches after it became aware that neither he nor the speeches were involved with or advocated illegal activity. He acknowledges that the IRS agents were entitled (perhaps even obligated) to attend the conferences and conventions in issue and determine whether anyone there broke the law, admitted breaking the law in the past, or advocated breaking the law in the future. Having done so and having determined that no one was doing these things, however, MacPherson argues that the agents and the agency were forbidden by section (e)(7) from collecting, maintaining, or disseminating records of the participants' exercise of their First Amendment rights.

The language of the statute itself provides little guidance in interpreting the law enforcement exception to section (e)(7). The statute's definitions do not include the term "law enforcement activities," and the phrase does not appear anywhere else in the statute. The IRS invites the court to look to the "law enforcement purposes" exception to the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(7), for help in interpreting the language in section (e)(7). Materials are exempt from compelled dis-

closure under the FOIA if they are "investigatory records compiled for law enforcement purposes" and meet certain other requirements. This circuit has held that an agency with a clear law enforcement mandate may invoke this FOIA exemption if it establishes a "rational nexus" between its law enforcement duties and the document for which the exemption is claimed. *See, e.g., Binion v. United States Department of Justice,* 695 F.2d 1189, 1194 (9th Cir. 1983).

Although one court has analogized the "law enforcement" provisions of the FOIA and the Privacy Act, *see Clarkson,* 678 F.2d at 1374 n. 10, the different purposes of the two statutes and the two exceptions counsel against such an analogy. The FOIA is intended to promote government disclosure of information. The law enforcement exemption to the FOIA is intended to *prevent* disclosure of sensitive information about innocent individuals and confidential informants and to relieve district courts of potentially onerous *in camera* inspections of documents. *See Irons v. Bell,* 596 F.2d 468, 474 (1st Cir.1979). A broad reading of the "law enforcement purposes" exception to the FOIA therefore serves privacy by concealing more information from public view.

Section (e)(7) of the Privacy Act, however, is intended to restrict the information about individuals' First Amendment activities that the government may collect and maintain at all. The "law enforcement activities" exception to the First Amendment protections of section (e)(7) of the Privacy Act is intended merely "to make certain that political and religious activities are not used as a cover for subversive activities." 120 Cong.Rec. H10,892 (daily ed. Nov. 20, 1974). In the case of section (e)(7), therefore, a *narrow* reading of "law enforcement activities" better serves the goal of privacy and avoids infringing on the overall First Amendment concerns of section (e)(7).

---

**3.** The government does not contend that either of the other two exceptions (that the records were expressly authorized either by statute or by MacPherson) applies here.

**4.** MacPherson does not concede that the records fall within the exception even if the district court's standard was correct, but he does not strongly dispute the issue on appeal.

Because of this distinction, we decline to analogize the law enforcement exceptions of the FOIA and the Privacy Act.

Turning to case law, we find that this section of the Privacy Act is relatively undeveloped. Only two other circuits have addressed the issue presented here, and they have established different standards.[5] The Eleventh Circuit has held that section (e)(7) is violated "to the extent that the IRS has engaged in the practice of collecting protected information, unconnected to any investigation of past, present or anticipated violations of the statutes which it is authorized to enforce...." *Clarkson v. IRS*, 678 F.2d 1368, 1375 (11th Cir.1982);[6] *accord Jabara v. Kelley*, 476 F.Supp. 561, 581 (E.D. Mich.1979), *vacated and remanded sub nom. Jabara v. Webster*, 691 F.2d 272 (6th Cir.1982), *cert. denied*, 464 U.S. 863, 104 S.Ct. 193, 78 L.Ed.2d 170 (1983). This is essentially the standard urged by MacPherson here.

The Sixth Circuit has adopted a somewhat stricter rule. According to that court, section (e)(7) "allows investigation with respect to the exercise of first amendment rights if such investigation is relevant to an authorized criminal investigation or to an authorized intelligence or administrative one." *Jabara v. Webster*, 691 F.2d at 279–80.[7] This latter formulation is essentially the standard applied by the district court.

A common feature of both the Sixth and Eleventh Circuits' opinions, however, is their apparently definitive statement of a "rule" with broad application to section (e)(7) cases. We question the wisdom of painting with such a broad stroke in this area of the law.

There are strong policy considerations on both sides of the issue here. The purpose of the section (e)(7) First Amendment protection is to prevent "collection of protected information not immediately needed, about law-abiding Americans, on the off-chance that Government or the particular agency might possibly have to deal with them in the future." S.Rep. 1183, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Admin.News 6916, 6971. As one court put it:

> Merely because [an agency] *may* act within its authority by monitoring the public or private speeches of a person in the course of a legitimate security investigation does not give it the right to maintain records relating to the contents of these speeches where the investigation does not focus on a past or anticipated specific criminal act.

*Jabara v. Kelley*, 476 F.Supp. 561, 581 (E.D.Mich.1979) (emphasis in original) (quoted with approval in *Clarkson v. IRS*, 678 F.2d 1368, 1374 (11th Cir.1982)), *vacated and remanded*, 691 F.2d 272 (6th Cir. 1982), *cert. denied*, 464 U.S. 863, 104 S.Ct.

**5.** The D.C. Circuit has also interpreted the "law enforcement activities" language of section (e)(7), but in a context that is not helpful here. *See Nagel v. United States Department of Health, Education, and Welfare*, 725 F.2d 1438, 1441 & n. 3 (D.C.Cir.1983) (holding that employee performance records containing statements made by employees at work, maintained for evaluative or disciplinary purposes, do not violate section (e)(7)); *see also American Federation of Government Employees, Local 421 v. Schlesinger*, 443 F.Supp. 431, 435 (D.D.C.1978) (reasonable steps taken by government agencies to prevent conflicts of interest are within law enforcement exception).

**6.** On remand, the district court in *Clarkson* apparently found that the records in question

were *not* within the exception. MacPherson argues that the *Clarkson* remand is distinguishable because Clarkson stated in the recorded speeches that he had violated the law, whereas MacPherson did not. The *Clarkson* remand is difficult to evaluate, however, because the decision is unpublished and the portion of the instant district court record that included a copy of the opinion is not part of the excerpt of record. The *Clarkson* case is again on appeal to the Eleventh Circuit.

**7.** In neither *Clarkson* nor *Jabara*, however, did the circuit courts reach the question of whether a specific agency record fell within the section (e)(7) exception; both cases reversed and remanded for further factual development. *Clarkson*, 678 F.2d at 1377; *Jabara*, 691 F.2d at 280.

193, 78 L.Ed.2d 170 (1983). As the *Clarkson* court noted,

> By enacting this exception, ... Congress did not intend to dilute the guarantees of the First Amendment by authorizing the maintenance of files on "persons who are merely exercising their constitutional rights." OMB Guidelines, 40 Fed.Reg. 28965 (1975) (quoting [floor debate in the Congressional Record]).

678 F.2d at 1374.

We recognize that even "incidental" surveillance and recording of innocent people exercising their First Amendment rights may have the "chilling effect" on those rights that section (e)(7) was intended to prohibit. "The mere compilation by the government of records describing the exercise of First Amendment freedoms creates the possibility that those records will be used to the speaker's detriment, and hence has a chilling effect on such exercise." *Nagel v. United States Department of Health, Education, and Welfare*, 725 F.2d 1438, 1441 (D.C.Cir.1984). Blanket allowance of such "incidental" surveillance and recording under the guise of general investigation could permit the exception to swallow the rule.

On the other side of the issue, the legitimate investigation and surveillance of suspected criminals and civil offenders inevitably involves observation and recording of the actions of innocent people, sometimes when those people are exercising their First Amendment rights. Some such observation is indisputably necessary to fulfill the exception's goal of "mak[ing] certain that political and religious activities are not used as a cover for subversive activities," 120 Cong.Rec. H10,892 (daily ed. Nov. 20, 1974); *see also* OMB Guidelines, 40 Fed.Reg. 28929, 28965 (July 9, 1975) (summarizing legislative history), and the very presence of the exception recognizes that some recording of First Amendment activities will take place. Even MacPherson concedes the IRS's right to attend what it regards as "tax protest seminars" and collect information regarding past illegalities, advocacy of violence and IRC violations, and the like. To forbid "incidental" surveillance of innocent people or to require excision of references to such people in surveillance records would be administratively cumbersome and damaging to the completeness and accuracy of the agency records. Blanket prohibition of such surveillance and recording unless the agency was investigating a specific offense or a specific person could thwart agency investigations and seriously undermine agency enforcement operations.

For these reasons, we decline to fashion a hard and fast standard for determining whether a record of First Amendment activity is exempt from section (e)(7) of the Privacy Act because it is "pertinent to and within the scope of an authorized law enforcement activity." The strong policy concerns on both sides of the issue present close and difficult questions and may balance differently in different cases. We therefore elect to consider the factors for and against the maintenance of such records of First Amendment activities on an individual, case-by-case basis.

▪ In the present case, MacPherson's speeches were given in public and distributed to anyone willing to pay the price of the tape. He was aware and even acknowledged in one of his speeches that he might be speaking to IRS agents in the audience. His speeches were a significant part of the conferences and conventions, and the IRS records of them were necessary to give the agency a complete and representative picture of the events.[8] There is no allegation

---

**8.** To the extent that MacPherson alleges that the IRS notes on his speeches are inaccurate, we note that the Privacy Act makes specific provision for access to and correction and amendment of inaccurate records, *see* 5 U.S.C. § 552a(d), and provides a civil remedy if the agency does not comply, 5 U.S.C. § 552a(g); *see also Hewitt v. Grabicki*, 794 F.2d 1373, 1379 (9th Cir.1986). Although this section of the Privacy Act is inapplicable to IRS records under some circumstances, *see* 26 U.S.C. § 7852(e) (1982) (certain sections of Privacy Act inapplicable to determination of liability for tax, penalty, interest, etc.), the records involved here are different

and no indication that the records were used or intended to be used for any other purpose than to give a complete picture of the conference. Under these circumstances, we hold that the IRS and Justice Department's maintenance of records of MacPherson's activities fall within the "law enforcement activities" exception to the proscription of section (e)(7) of the Privacy Act.[9]

Accordingly, we AFFIRM.

in kind and so the remedy is available. *Cf. Clarkson,* 678 F.2d at 1375–77.

**9.** In concluding that the "law enforcement activities" exception exempts the records involved here, we emphasize that we do not decide a number of similar but potentially distinguishable situations that may arise. For example, we do not decide whether the records of MacPherson's speeches would be "pertinent to and within the scope of an authorized law enforcement activity" if the records were filed under his name rather than in a general "tax protestor" file. Likewise we do not decide whether records of the activities of other individuals at the conventions and conferences who did not give public speeches and whose comments were not recorded for sale would fall within the "law enforcement activities" exception. Such cases might raise additional questions about the "scope" of the law enforcement activity involved.